UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 26, 2007**

Charles R. Fulbruge III
Clerk

No. 06-30270

LAURIE WEISS STRONG,

Plaintiff-Appellant,

VERSUS

UNIVERSITY HEALTH CARE SYSTEM, L.L.C., d/b/a TULANE UNIVERSITY
HOSPITAL AND CLINIC,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before REAVLEY, DeMOSS, and BENAVIDES, Circuit Judges.

DeMOSS, Circuit Judge:

## INTRODUCTION

Plaintiff-Appellant Laurie Strong challenges the district court's grant of summary judgment in favor of University Healthcare System, L.C. ("UHS") dismissing her Title VII retaliation claims. We must decide whether, within the applicable *McDonnell Douglas* burden-shifting framework, Strong has shown that UHS would not have terminated her employment "but for" its alleged retaliatory motive.

## FACTUAL BACKGROUND

UHS is a large hospital in Louisiana. Prior to the termination

of her employment, Strong worked for approximately two years as a nurse coordinator in the "liver department" of UHS's Abdominal Transplant Center.

On December 15, 2003, Strong attended a UHS meeting called by Susan Andrews, one of Strong's numerous supervisors. At the meeting, Strong complained that Dr. Douglas Slakey, a surgeon, discriminated against her because she is a woman. Strong cited three separate incidents: (1) he called her lazy; (2) he called her stupid and lazy and screamed at her; and (3) he got angry at her during a meeting.

In January 2004, Strong asked Andrews about the status of her complaint against Dr. Slakey. Andrews responded that it was under consideration and that the details were confidential. Soon after, Andrews met with Strong and reaffirmed that the matter was being reviewed and that further details were confidential.

Before and after Strong complained about Dr. Slakey's work conduct, however, Strong's conduct also was called into question. Between late 2003 and early 2004, numerous patients, co-workers, supervisors and doctors complained about Strong's behavior in the workplace.

Specifically, (1) in October 2003, a staff member reported that Strong asked her to perform duties that were Strong's responsibility to perform; (2) in December 2003, a patient's husband reported that Strong was rude and demeaning to his wife;

2

(3) in mid-January 2004, a surgeon reported that, in front of new employees, Strong inappropriately commented that physicians at UHS use livers that are "no good" and "high risk"; (4) in late-January 2004, Jeannette Hammond and Louis Larmeu, two more of Strong's supervisors, reported that during a meeting initiated to address other matters, Strong brought up her complaint against Dr. Slakey and persisted in knowing its status; (5) also in late-January 2004, Marian O'Rourke, Director of Nursing and seemingly Strong's most direct supervisor, reported that Strong's attitude was combative when given orders; (6) on January 30, 2004, a patient filed an official grievance against Strong regarding her treatment of him; (7) in mid-February 2004, a staff member reported that Strong refused to see a patient who had been waiting in a room for over an hour; (8) also in mid-February 2004, a nurse under Strong's supervision complained that Strong mistreated him; and (9) in general, UHS employees observed that Strong continuously showed supervisors little respect and challenged their authority.

Strong was "talked to" or "counseled" by different supervisors after a number of the incidents. Although Strong does not explain exactly what the "talks" or "counselings" entailed, they appear to have been informal and brief discussions initiated to address the substance of particular complaints made against Strong. Strong disagrees with the allegations underlying some of the complaints. Importantly, however, she does not allege that the complaints were

3

made in retaliation for her complaint against Dr. Slakey.

Strong's alleged disruptiveness continued even after supervisors confronted her. On March 3, 2004, O'Rourke implemented a new policy requiring that lab reports be entered by clerks rather than nurse coordinators. Strong commented that the new policy was "silly." To UHS supervisors, the comment was another example of Strong's tendency to challenge authority and exhibit a negative or hostile attitude in the workplace.

On March 10, 2004, O'Rourke asked Strong to call the operating room to check on a transplant patient. Strong resisted and had to be asked multiple times to make the call. Later that day, a doctor reported to Hammond (again, one of Strong's supervisors) that Strong (1) made negative comments about a transplant patient before the patient had even been seen by a doctor, and (2) improperly steered patients away from certain doctors.

On March 11, 2004, during a meeting with Andrews and O'Rourke, Strong became combative and aggressive after being asked to inform a supervisor when "dealing with a non-liver patient." She accused them of "threatening her." In response, Andrews and O'Rourke asked a Human Resources ("HR") employee to join the meeting. It ended when Strong asked one supervisor if she "was done."

Later that day, a staff member reported that Strong erroneously characterized a patient as an alcohol drinker not eligible for a liver transplant. Strong got the misinformation from

4

a page from a different patient's file, which mistakenly had been placed in the wrong file by a clerk. However, UHS partially faulted Strong for not catching the error, which it determined should have been noticed after an adequate reading of the entire file.

According to UHS, the incident was the proverbial straw that broke the camel's back. Andrews decided to suspend Strong with pay. Strong then told HR she thought she was being retaliated against. But when HR asked Strong to expand on her allegation of retaliation, she refused.

Days later, HR asked Strong to come to a meeting to explain her allegation of retaliation. Strong came to the meeting, but provided HR with no evidence of retaliation. HR ultimately concluded that Strong's retaliation allegation had no merit.

On March 25, 2004, HR called Strong to another meeting. There, UHS provided Strong with reasons for her continued suspension: poor performance and improper work conduct, including redirecting patients away from certain doctors, presenting patients in a negative fashion, arguing with superiors, and engaging in behavior obstructive to various department policies. Strong provided no evidence at that time suggesting that the real reason was retaliation.

After further investigation and consideration, UHS fired Strong on March 31, 2004, citing the numerous incidents outlined above. The decision was made collectively by her many supervisors.

5

**PROCEDURAL HISTORY**

On November 24, 2004, Strong filed a complaint against UHS alleging violations of Title VII and Louisiana law. First, she alleged gender discrimination based on the incidents with Dr. Slakey. Second, she alleged retaliation based on her termination a few months after complaining of discrimination.

UHS moved for summary judgment, asking that the discrimination claims be dismissed because the three incidents with Dr. Slakey were too insignificant to be actionable, and that the retaliation claims be dismissed because Strong failed to present legally sufficient evidence that UHS's stated reasons for firing Strong were pretextual.

The district court agreed with both of UHS's arguments and dismissed Strong's claims. On appeal, Strong does not challenge the dismissal of her gender discrimination claims. She does, however, challenge the dismissal of her retaliation claims.[1]

**DISCUSSION**

A. Standard of Review

We review a district court's grant of summary judgment *de*

---

[1]Strong filed two retaliation claims, one under Title VII and another under Louisiana's "whistleblower" statute, LA. REV. STAT. ANN. § 23:967 (1997). But, as the district court recognized, the standards governing both claims are materially indistinguishable. *See, e.g.*, *Smith v. AT&T Solutions, Inc.*, 90 F. App'x 718 (5th Cir. 1994) (unpublished); *Imbornone v. Treasure Chest Casino*, No. 04-2150, 2006 WL 1235979, at *3 (E.D. La. May 3, 2006).

6

*novo*, applying the same legal standard as the district court. *Chacko v. Sabre, Inc.*, 473 F.3d 604, 609 (5th Cir. 2006). Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgement as a matter of law. FED. R. CIV. P. 56(c).

## B. Legal Analysis

### 1. Basic Retaliation Law

Because Strong's retaliation claims are based on a pretext theory, our analysis is governed by the well-known *McDonnell Douglas* test and its burden-shifting framework. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Thus, to start, Strong must make a *prima facie* showing that her termination was retaliatory. *Id.* at 607. For summary judgment purposes only, UHS conceded at the district court that Strong made a *prima facie* showing.

The burden then shifts to UHS to state a legitimate, non-discriminatory reason for firing Strong. *Id.* UHS points to the long list of occurrences between October 2003 and March 2004, and Strong does not dispute that such occurrences provide an adequate, legal reason for termination.

Finally, the burden shifts back to Strong. *Id.* Her ultimate burden is to show pretext; that is, to prove by a preponderance that UHS fired her not for its stated reasons, but in retaliation for her gender discrimination complaint against Dr. Slakey. *See id.*

7

## 2. Burden of Proof

It is well established that Strong ultimately must "prove that [UHS's] stated reason for the adverse action was merely a pretext for the real, retaliatory purpose." *Id.* at 608. Surprisingly, the parties disagree whether Strong must show that she would not have been fired "but for" UHS's alleged retaliatory purpose. Strong, relying on numerous cases discussing the standard applicable to a plaintiff's *prima facie* case, suggests that she need only show a "causal link" between the alleged retaliation and the adverse employment action. However, the district court determined, and UHS agrees, that the but for standard applies.

We think our decision in *Septimus* leaves no doubt that the but for standard controls: "The proper standard of proof . . . [for] a Title VII retaliation claim is that the adverse employment action . . . *would not have occurred 'but for' [the] protected conduct.*" *Id.* (emphasis added) (noting that the Fifth Circuit has "consistently held" that the but for standard applies and citing numerous cases supporting that proposition). Therefore, the district court applied the correct standard.

Applying this standard, the question becomes: Has Strong put forth legally sufficient summary judgment evidence that she would not have been fired but for her complaint against Dr. Slakey (or inversely, that she would not have been fired but for UHS's alleged retaliation)? Of course, because Strong cites and relies on the

8

*prima facie* causation standard, she does not actually argue that she meets the but for standard. Rather, she points to evidence that she contends shows a "causal link" between the alleged retaliation and the termination of her employment. Nevertheless, we will analyze the evidence under the but for standard to determine whether Strong has met her burden.

### 3. Evidence of Retaliation

Strong points primarily to two pieces of "evidence": First, according to Strong, UHS treated less severely other employees who acted worse than she did; and second, there was a close temporal proximity between her complaint against Dr. Slakey and the termination of her employment.[2]

#### a. UHS's Treatment of Other Employees

Strong's first contention is that other employees, who Strong alleges acted worse than she did, were disciplined less severely

---

[2]Strong also argues that the fact the decision to fire her was made collectively by all of her supervisors suggests retaliation. We disagree with Strong's reasoning. Contrary to Strong's assertion, the fact that the decision to fire her was made collectively suggests no retaliation. Uniform agreement to fire her strengthens UHS's argument that poor performance and improper conduct were the reasons she was fired. In addition, collective decision-making is less susceptible to influence by an individual with a retaliatory motive.

Strong contends that another fact suggests retaliation: UHS has "constantly changed" its reasons for firing her. However, our review of the record has revealed no material change in UHS's position. From the start, UHS has cited various examples of poor performance and improper conduct as its reasons for firing Strong.

Thus, we reject both of these arguments and accord them no weight in our pretext analysis.

than her or not at all. This, Strong contends, suggests that retaliation was UHS's real motivation for firing her.

Strong points to numerous employees and incidents to support her contention. The following, according to Strong, are her two best examples: (1) a doctor who had "a mental illness" and was "responsible for the deaths of patients" was allowed to voluntarily resign, and (2) a nurse coordinator who had "a drug problem" and displayed "erratic" behavior was not disciplined. Strong contends that she was fired simply for "reading a document which had been misfiled," which is less serious than the conduct of the other employees.

First, we must point out that UHS has never stated that it fired Strong for reading a single, misfiled document. Rather, the reading of the misfiled document was the last straw, which led to her initial, paid suspension. UHS alleges that it decided to fire her after reviewing that incident along with the other approximately fourteen cited incidents (generally referred to by UHS as "poor performance" or "improper conduct"). Regardless, we are not convinced that any of Strong's examples, which are supported solely by her own self-serving affidavit, evidence retaliation. Simply put, none of the examples involve a similarly situated employee who received less severe treatment than Strong did.

Of the two examples above, the first involved a doctor, an

10

employee considerably different than a nurse coordinator. We cannot assume, nor require, that hospitals discipline doctors and nurse coordinators in an identical fashion. In addition, the doctor resigned voluntarily, something Strong very clearly was not willing to do. UHS might very well have fired the doctor had he not resigned. Thus, we are unable to say that this example evidences retaliation against Strong.

The second example involves a nurse coordinator, but dissimilar conduct. First, we know nothing about the alleged "drug problem" or its severity. Similarly, Strong sheds no light on the employees alleged "erratic" behavior. In any event, this particular employee did not have the extensive disciplinary history Strong had when she was fired. Again, we cannot say that this example suggests retaliation against Strong.

Strong has not shown that she was treated more harshly than other employees under similar circumstances. Thus, we turn to Strong's only remaining argument.

### b. Temporal Proximity

Citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992), Strong argues that the three and a half month time span between her complaint and termination is solid evidence of retaliation. As Strong notes, in *Shirley* we affirmed a district court's finding that the plaintiff, who had alleged retaliation, proved but for causation. 970 F.2d at 43. The plaintiff was fired

fourteen months after filing an EEOC complaint and just two months after it was dismissed. *Id.* at 42-43. Strong's conclusion is that "summary judgment is simply inappropriate in retaliation cases where the adverse employment decision follows closely on the heels of the plaintiff's complaint of discrimination."

Our precedent lends no support whatsoever to Strong's position. In fact, we have stated just the opposite. In *Rosenson v. Alltel Information Services*, after noting that the defendant stated legitimate, nondiscriminatory reasons for firing the plaintiff, we held that "[w]ithout more than timing allegations . . . summary judgment in favor of [the defendant] was proper." 373 F.3d 647, 656 (5th Cir. 2004).

In addition, Strong has grossly mischaracterized our holding in *Shirley*. The plaintiff in *Shirley* proved causation not by relying solely on temporal proximity, but by also showing that she had no disciplinary history during her nine years of employment and quickly was fired for incidents for which no evidence existed. *See Shirley*, 970 F.2d at 43. And, importantly, her boss made disparaging comments about her EEOC complaint and "harassed [her] to death about it" before firing her. *Id.*

The circumstances surrounding Strong's termination were very different and are considerably less compelling legally: Strong was not harassed at all about her gender discrimination complaint; Strong had worked for UHS for two years, not nine; Strong's

12

disciplinary record was not completely clean prior to her complaint; and Strong's poor performance and improper conduct were not unsubstantiated when she was fired. To the contrary, reports of Strong's disruptiveness came from every direction at UHS: subordinates, equals, supervisors, and patients.

Thus, Strong is left with no evidence of retaliation save temporal proximity. Again, temporal proximity alone is insufficient to prove but for causation. *See id.* (noting that temporal proximity is just "one of the elements in the entire calculation").

To prevent future litigants from relying on temporal proximity alone to establish but for causation, we once again attempt to clarify the issue. In *Clark County School District v. Breeden*, the Supreme Court noted that "cases that accept mere temporal proximity . . . as sufficient evidence of causality *to establish a prima facie case* uniformly hold that the temporal proximity must be 'very close.'" 532 U.S. 268, 273 (2001) (emphasis added). *Breeden* makes clear that (1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation. *See id.* But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation. Such a rule would unnecessarily tie the hands of employers.

Employers are sometimes forced to remove employees who are

13

performing poorly, engaging in improper work conduct, or severely disrupting the workplace. This is especially true for hospitals providing serious medical care to patients. Precedent does not prevent a hospital from removing such an employee simply because the employee engaged in a protected work activity months prior. Accordingly, because UHS stated legitimate reasons for firing Strong, and because Strong has not put forth sufficient evidence that those reasons were pretextual, Strong's retaliation claims must fail.

Before concluding, however, we must briefly mention that after the district court granted summary judgment, the United States Supreme Court decided *Burlington Northern & Santa Fe Railway Co. v. White*, __ U.S. __, 126 S. Ct. 2405 (2006). *Burlington* redefined an "adverse employment action" to include actions by an employer that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S. Ct. at 2415 (internal quotation marks omitted).

On appeal, pointing to *Burlington*'s new definition, Strong argues that she suffered an adverse employment action each time she was "talked to" or "counseled" by her supervisors following various complaints made against her. Anticipating *Burlington*, Strong preserved the issue at the district court. But we need not address whether these brief discussions qualify as adverse employment actions. Similar to her allegation that her termination was

14

retaliatory, Strong cites no evidence other than temporal proximity to suggest that the discussions were retaliatory. Thus, Strong cannot prove but for causation, and *Burlington* does not effect our review of the district court's decision.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of UHS dismissing Strong's retaliation claims.

**AFFIRMED.**