# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-30931
Summary Calendar

GUINN BROTHERS, LLC,

Plaintiff-Appellant,

v.

JONES BROTHERS, INC. OF TENNESSEE,

Defendant-Appellee,

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 05-CV-1616

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Guinn Brothers, LLC ("Guinn") appeals the district court's grant of summary judgment to Defendant-Appellant Jones Brothers, Inc. ("Jones") on its claim for damages arising from Jones's alleged breach of contract. For the reasons discussed below, we affirm in part and reverse in part the district court's grant of summary judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

On March 23, 2000, Jones was awarded a contract with the Louisiana Department of Transportation ("DOTD") for road and bridge construction on Louisiana Highway 171. Jones and Guinn entered a subcontract agreement under which Guinn would remove and construct four bridges for a price of $1,747,883.81. This subcontract incorporated by reference all of the terms and conditions of the DOTD contract, as well as all of the plans, specifications, and schedules between Jones and the DOTD. The subcontract also contained a mandatory notice provision pertaining to claims for additional compensation:

> [Guinn] agrees to give notice in writing and make all claims for which [DOTD] is, or may be, liable in the manner provided and in a time framework which is consistent with the Principal Contract so that [Jones] may timely give notice of such claim to [DOTD]. Provided that the preceding sentence does not require earlier action, written notice of such claims shall be given by [Guinn] to [Jones] within one (1) week prior to the beginning of the Work or the event or condition for which such claim is to be made, or immediately upon [Guinn's] first knowledge of the event or condition, whichever shall first occur. Otherwise, such claims shall be deemed waived. [Guinn] shall give written notice of all claims for which [Jones] is, or may be, liable, within five (5) days of the beginning of the event for which claim is made; otherwise, such claims shall be deemed waived. This notice period takes precedence over any other notice provisions provided by, or in, this Subcontract.

The contract between Jones and DOTD contained a similar mandatory notice provision. However, it also contained a requirement that notification of all claims must conform to the requirements of EDSM III.1.1.28, which sets forth specific information and documents which must be submitted in support of a claim.

From the project's inception, there were significant delays and Guinn's work was stopped for a number of periods of time. It is these periods of delay, discussed more fully below, which primarily form the basis of this lawsuit.

Eventually, in early 2004, a dispute arose between Jones and the DOTD that caused Jones to demobilize its equipment and discontinue all work on the project. On May 27, 2004, counsel for Jones sent correspondence to Guinn advising Guinn to cease all work on the project and also informing Guinn of settlement negotiations between Jones and DOTD. In response, Guinn indicated that it had "incurred significant down time with this project" and would be "examin[ing] their options closely as to how they should best address the down time issue." As part of the settlement negotiations, DOTD permitted Jones to rebid the remaining portion, and Guinn submitted a revised bid to Jones on October 11, 2004. Guinn indicated that this revised bid did not include the delay and down time claim because Guinn did not yet have all the information and would submit the claim when it was complete.

Ultimately, in February 2005, under a settlement agreement between Jones and DOTD (Plan Change No. 50) Jones's involvement in the project was terminated. As part of the settlement agreement, Jones agreed to indemnify the DOTD for all claims arising out of the bridge construction project.

Based on the delays and eventual termination of the contract, Guinn filed suit against Jones in August 2005. Guinn's complaint contains six numbered causes of action, each describing a separate incident in which Jones allegedly breached the subcontract, causing Guinn to suffer delay damages. In its sixth cause of action, Guinn also sought lost profits and lost material resulting from Jones's failure to allow Guinn to complete the job. After extensive discovery, Jones moved for summary judgment. On September 27, 2007, the district court granted summary judgment to Jones on all of Guinn's claims. Guinn timely appealed.

II.

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). "Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as matter of law." Id. (citing FED. R. CIV. P. 56(c)). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the nonmovant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. To survive a summary judgment motion, the nonmovant "need only present evidence from which a jury might return a verdict in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986), but mere allegations or denials will not defeat a well-supported motion for summary judgment. FED. R. CIV. P. 56(e)

III.

On appeal, Guinn first argues that the district court erred in granting summary judgment on its claims for lost profits and lost materials because Jones did not move for summary judgment on these claims. Generally, "a district court may not grant summary judgment sua sponte on grounds not requested by the moving party." Baker v. Metro. Life Ins. Co., 364 F.3d 624, 632 (5th Cir. 2004) (quoting John Deere Co., v. Am. Nat'l Bank, 809 F.2d 1190, 1192 (5th Cir. 1987)). An exception exists when the district court gives a party ten days notice; in those

situations a court may grant summary judgment sua sponte on grounds not urged in a pending motion. See Judwin Properties, Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 436-37 (5th Cir. 1992).

We agree that Jones did not move for summary judgment on the lost profits and materials claims. Examining the record, Jones's summary judgment motion does not ever reference or discuss Guinn's claims for lost profits or lost material. Rather, the motion focuses on the six specific instances of delay alleged by Guinn. Further, Guinn's opposition to the motion for summary judgment fully evidenced its understanding that these claims were not part of the motion for summary judgment.

In addition, the record does not indicate that the district court gave any notice to Guinn before sua sponte dismissing its claims for lost profits and lost materials. Consequently, Guinn was not on notice to present arguments on these claims, and we reverse the district court's grant of summary judgment with regard to these two claims.

IV.

Guinn also argues that the district court erred in dismissing each of its six delay claims because it provided proper written notification of its claims to Jones as required by the subcontract.

In Louisiana, a contract is the law between the parties. Gen. Elec. Capital Corp. v. S.E. Health Care, Inc., 950 F.2d 944, 951 (5th Cir. 1991). Under the Civil Code, contract interpretation "is the determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046. "The general rule in Louisiana is that a provision in a written construction contract that no claims for extra work or materials shall be allowed unless made in writing is valid and binding upon the parties, and that when the contract so

provides, and there is no written order for such extras, no recovery can be had for them." Meaux v. S. Const. Corp.,159 So. 2d 156, 161 (La. Ct. App. 1964).

Here, under the plain language of the subcontract, Guinn was required to give written notice and make all claims within one of two time periods: (1) for claims for which DOTD is the responsible party, in the manner and timeframe provided in the primary contract, but no later than one week prior to the event for which such claim is to be made or immediately upon Guinn's first knowledge of the event or condition; or (2) for claims for which Jones is the responsible party, within five days of the beginning of the event for which the claim is based. The subcontract is unambiguous that if timely notice is not provided, the claim is waived. Additionally, the subcontract incorporates the provisions of the contract between the DOTD and Jones, and thus requires documentation of all items and figures for claims against the DOTD that the subcontractor intends to bring.

The district court concluded that, with respect to Guinn's six down time claims, Guinn had failed to comply with the notice and documentation provisions of the subcontract. Accordingly, the district court granted summary judgment to Jones on these claim. We will examine each of Guinn's claims in turn.

First, Guinn alleges that on May 29, 2000, it had completed its excavating work and was prepared to proceed, but that it was unable to work from May 29, 2000 until October 2, 2000, because of Jones' refusal to timely install the surcharge[1] material. On September 11, 2000, Guinn sent Jones notification of

---

[1] Surcharge is excess material (usually dirt) placed on top of an embankment area to accelerate the compaction process of the underlying embankment. After the desired compaction level is reached, the surcharge material is removed. As originally bid, the project did not include a surcharge requirement, but after some issues arose with the installation of embankment material, the DOTD notified Jones in June 2000 that it was requiring the installation of a surcharge. On September 1, 2000, the DOTD issued Plan Change No. 2, "Surcharge Placement and Removal," which modified the existing contract, the work schedule, and the specifications associated with the embankment material and the surcharge.

the delays and Guinn's intent to seek reimbursement for its additional costs. This letter was forwarded to the DOTD on September 13, 2000, and the DOTD responded that the impact of delays and additional costs would be assessed at a later date via the Critical Path Method ("CPM") of construction scheduling. The parties disagree over whether DOTD or Jones is responsible for this claim, and thus, which notice period applies and whether Guinn was required to submit documentation in compliance with EDSM III.1.1.28. We need not resolve this dispute, because under either time period, Guinn's notice was untimely. Guinn's own petition states that its claim for surcharge delay began on May 29, 2000. However, Guinn did not submit notice of a possible claim for delay damages until September 11, 2000, over three months after discovery of the problem.

Second, Guinn alleges that Jones negligently installed the control points[2] for one of the bridges, preventing Guinn from working from November 13, 2000 through November 17, 2000. Guinn argues that it provided notice to Jones of this claim in an October 27, 2000 letter. However, although this letter indicates that there is a problem with the control points, and that Guinn will not be responsible for any incorrect layout, this letter does not state that Guinn would be asserting a claim based on any resulting delay. Accordingly, this letter cannot be said to constitute notice to Jones for a down time claim stemming from negligent installation of the control point.

Third, Guinn alleges that Jones impeded Guinn from completing its work by failing to blade wet material off of the surcharge after a rainfall on four separate occasions: November 27, 2000; January 2, 2001 to January 8, 2001; January 10, 2001 to January 22, 2001; and March 8, 2001 to March 19, 2001. Guinn first contends that the September 11, 2000 letter served as adequate notice for each of these periods. This is untenable, given that the September 11,

---

[2] Control points are the reference points set to determine where to place the pilings for the bridge.

2000 letter dealt only with the pile driving delays associated with the surcharge. Jones's alleged failure to blade wet material off of the surcharge is an entirely separate claim. Guinn refers the court to five other letters sent to Jones referencing surcharge removal and delays associated with the layout. None of these letters discuss or even mention any problem with removal of wet material off the surcharge after a rainfall. These letters cannot be deemed to have provided the notice envisioned by the contract.

Fourth, Guinn alleges two additional periods of delay based on Jones's negligent fixing of the control points: February 2, 2001 to March 1, 2001; and April 2, 2001 to April 26, 2001. As we noted above, the October 27, 2000 letter was insufficient to provide notice to Jones because it did not indicate that Guinn would be seeking delay damages stemming from this issue. Guinn also points the Court to four other letters dated: February 22, 2001; April 18, 2001; April 26, 2001; February 1, 2002; and May 21, 2004. None of these letters could possibly have provided timely notice with regard to the February 2001 claim, as they were all submitted more than five days after the delay allegedly began.

However, the February 22, 2001, letter clearly indicates that problems with the control points have continued to cause delays in the construction of Bridge #2 and that Guinn would not be able to continue its work until the layout problem was resolved. In this letter, Guinn also states that "it intends to submit to [Jones] all costs related to the delays." Guinn provided evidence to the district court that the second delay period, April 2, 2001 to April 26, 2001, was also caused by the failure of the control points for Bridge #2 to be placed in the proper positions, the problem specifically discussed in the February 22, 2001, letter. Jones was therefore adequately notified of the potential for a down time claim resulting from the problems with the Bridge #2 control points prior to the April 2001 delay period. Therefore, we find that Guinn provided sufficient notice with respect to its delay claim for the period April 2, 2001 to April 26, 2001.

Next, Guinn alleges three periods of delay arising from Jones's failure to properly install embankment material.[3]  From May 24, 2001, through July 20, 2001, Guinn contends that it was unable to work because it was waiting for Jones to remove and re-install embankment material.  Guinn alleges that it completed the embankment work itself, with the approval of Jones and the DOTD, but has not been reimbursed for the use of its equipment or labor.  From July 30, 2001 to October 1, 2001, Guinn asserts that it was unable to work because of Jones's failure to correctly install embankment material for the approach slab on the south side of Bridge #1 northbound.  Finally, from October 9, 2001 to October 23, 2001, Guinn was unable to work because it was waiting for Jones to install embankment material for both approach slabs at Bridge #1 northbound.  Guinn ultimately installed the material itself, but alleges it was not compensated by Jones.  Guinn argues that it provided timely notice of all three claims in its April 18, 2001 letter to Jones.  An examination of the record reveals that this letter focuses primarily on the control point problem, and only cursorily mentions that Guinn has asked Jones to have the approach slab graded.  This letter does not discuss the three specific problems alleged by Guinn in its petition, nor does it discuss the removal and reinstallation of embankment material.  The mere mention of a general problem with the "approach slabs" was not sufficient, under the subcontract, to serve as notice of any one of Guinn's three distinct embankment related claims.

Finally, Guinn alleges that from October 23, 2001 until May 27, 2004, Jones refused to allow Guinn to perform any work on the jobsite for no reason.  The record contains two letters referencing the shut-down, one dated February 1, 2002, and another on March 25, 2004.  Neither of these could possibly provide timely notice for a claim allegedly commencing on October 23, 2001.

---

[3] Embankment material is the road base leading up to bridges and between bridges. Embankment material must be in place before bridge construction can begin.

In sum, with the exception of Guinn's April 2, 2001 to April 26, 2001 control point delay claim, we agree with the district court that Guinn failed to provide Jones with timely notice of these claims under the terms the subcontract.

V.

Perhaps recognizing the lack of timely notice, Guinn also argues that the notice and documentation provisions of the subcontract were modified by the written plan changes, letter modifications, actions of the parties, and oral modifications. Guinn argues that with respect to the surcharge installation, DOTD Plan Change No. 2 evidences a clear, written modification to the notice and documentation provisions of the original contract. Similarly, Guinn argues that the "problems and delays" with the control points and approach slabs evidence a modification of the notice provisions. The district court found that Guinn failed to present competent summary judgment evidence demonstrating that the parties modified the contractual language regarding the claim notification requirements.

Under Louisiana law, written contracts for construction, including notice provisions, may be modified orally and by the conduct of the parties. Pelican Electrical Contractors v. Neumeyer, 419 So. 2d 1, 5 (La. App. 1982). Guinn, as the party asserting modification, must prove by a preponderance of the evidence facts or acts giving rise to the modification. LA. CIV. CODE ANN. art. 1831; Wisinger v. Casten, 550 So. 2d 685 (La. App. 1989). Further, the party urging modification must establish that parties mutually consented to the agreement as modified. Taita Chem. Co. v. Westlake Styrene Corp., 246 F.3d 377, 386 (5th Cir. 2001) (citing LA. CIV. CODE ANN. art 1927).

Guinn relies primarily on Big "D" Dirt Services, Inc. v. Westwood, Inc., 653 So. 2d 604 (La. App. 1995), to support its argument that the conduct and letters of the parties orally modified the notice provision of the subcontract. In that

case, Big "D," a subcontractor, had completed its work under the subcontract, but the DOTD rejected the work and Westwood, the general contractor, hired a third party to correct the defects in Big "D"'s work. Id. at 1-2. Westwood then refused to pay Big "D" for its work on the project and Big "D" filed suit. Id. Among other things, Big "D" alleged that Westwood's failure to comply with a seven-day written notice provision amounted to a breach of contract for which Westwood was liable. Id. at 9. In response, Westwood argued that the strict notice requirement was modified by a subsequent oral agreement between the parties. Id. The court found that, through their actions and oral discussions, Big "D" and Westwood "modified the written notice requirement to, in effect, do away with its necessity." Id. at 14. The court indicated that Westwood provided evidence that Big "D" was orally told of DOTD's rejection of the work; that both parties attended a lunch meeting where remediation measures were discussed; that, although not necessary, Big "D" never requested written notice; and the fact that Big "D" attempted to contract a third party to do the remediation work six weeks after notification (when remediation was required within seven days) belied its contention that the contract was not modified. Id. at 14-15.

We agree with the district court that Big "D" Dirt Services is distinguishable. In that case, Westwood presented evidence that Big "D" had acted inconsistently with the notice provisions, and thus believed the provisions were modified. Guinn has presented no such evidence that Jones acted in a way consistent with its argument that the notice provisions had been modified, and thus has failed to demonstrate that the parties mutually agreed to modify the contract. See, e.g., Taita Chem. Co., 246 F.3d at 386. Guinn argues that Plan Change No. 2 and the issue with the control points indicates that the subcontract was modified. While this evidence does indicate that the parties may have modified the subcontract with respect to the layout, deadlines, materials, and other aspects of the construction of the project, it does not

11

demonstrate a mutual agreement to modify the strict notice provisions. See L & A Contracting Co. v. Ram Indus. Coatings Inc., 762 So. 2d 1223, 1233 (La. App. 2000) (holding that although parties had orally modified contract to include additional work, no agreement was made with regards to when payment was due). None of the documents and letters pointed to by Guinn discuss such a modification of the claim notice provisions. In sum, the record is devoid of any evidence which supports Guinn's argument that the parties orally modified the subcontract to remove the notification provision.

Therefore, because Guinn failed to present sufficient evidence to create a genuine issue of material fact as to whether the parties orally modified the notice provisions of the subcontract, the district court correctly found that the notice provision is valid. Thus, as discussed above, with the exception of Guinn's April 2, 2001 to April 26, 2001 control point delay claim, Guinn's delay claims are barred because of its failure to comply with the notice provision and the district court's grant of summary judgment was proper. However, because Guinn provided sufficient notice under the subcontract of the April 2, 2001 to April 26, 2001 control point delay claim, the district court erred in granting summary judgment to Jones on this claim.

VI.

In conclusion, we REVERSE the district court's grant of summary judgment with regard to Guinn's claims for lost profits and lost materials. Further, with the exception of Guinn's April 2, 2001 to April 26, 2001 control point delay claim, we AFFIRM the district court's grant of summary judgment with regard to these claims. With respect to Guinn's April 2, 2001 to April 26, 2001 control point delay claim, we REVERSE the district court's grant of summary judgment. This case is REMANDED to the district court for further proceedings not inconsistent with this opinion.