# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30813
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2018

Lyle W. Cayce
Clerk

BRENDA GANHEART,

 Plaintiff–Appellant,

v.

CHARLES BROWN; ELIZABETH ROBINS; NEW ORLEANS CITY,

 Defendants–Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-43

Before JOLLY, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

 Brenda Ganheart is an employee at the New Orleans Public Library (the Library). She brought this suit against Charles Brown, Elizabeth Robins, and New Orleans City (collectively, the City), alleging violations of Title VII of the Civil Rights Act and the Due Process Clause based on various employment actions she alleges City personnel took against her. The district court twice granted the City's motion to dismiss for failure to state a claim. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30813

**I**

Ganheart, an African-American woman, has been an employee of the Library since 2008. She alleges that in 2014 she began raising complaints to her supervisors regarding discriminatory staffing practices. In April 2014, Ganheart responded to a complaint by a co-worker about her job performance with an email, circulated to several co-workers, which again criticized the Library's staffing practices.

Ganheart was demoted in May 2014. She alleges that in her new position she was placed under "micro-management and surveillance" by her white supervisor. This supervisor allegedly refused to intervene in disputes, shared with Ganheart "her view point when she perceived that [Ganheart] was at fault," and stripped Ganheart of various job duties. Ganheart also alleges that another "[w]hite and former subordinate" co-worker "constantly interfered with [Ganheart's] instructions to the staff regarding duties" and "t[old her] and other staff members that [Ganheart] could not tell [the staff] what to do because [she] was not their supervisor." In August 2014, Ganheart filed a harassment complaint about this co-worker.

In September 2014, Ganheart received a letter of reprimand from Library Director Charles Brown regarding work performance. She filed an appeal with the New Orleans Civil Service Commission. During the course of that appeal, Ganheart claims that the City was unresponsive to document requests. The Library withdrew the letter of reprimand, replaced it with a written warning, and the Civil Service Commission granted the City's motion to dismiss the appeal as moot. Ganheart opposed the motion, claiming that she never received the written warning and that no one from the City contacted her about it.

Ganheart further alleges that in December 2014, her performance evaluation rating was lowered from "Exceeds" to "Competent." She alleges that she had previously received "Exceeds" ratings but that her evaluator in this instance maintained a policy "that no one should be rated higher tha[n] Competent."

In April 2015, Ganheart claims that the Library's white Human Resources Director issued a written warning to her following a complaint raised by a white co-worker with whom Ganheart had argued over the phone. The HR Director told Ganheart that several other complaints had been lodged against her. Her supervisor then instructed her "to refer all conflicts involving personnel from other branches to her [supervisor's] attention" and "not to engage in a difference of opinion."

In November 2015, Ganheart filed a charge with the Louisiana Commission on Human Rights and the Equal Employment Opportunity Commission (EEOC). The charge took issue with her 2014 demotion, the treatment she experienced at the hands of her new supervisor and co-worker, the reprimand letter, the 2014 performance review, and the 2015 resolution of the various complaints filed against her. Ganheart asserted that the most recent incident of discriminatory conduct took place in July 2015 and that such conduct was not a "continuing action." She received a statutory Notice of Right to Sue letter (Notice) from the EEOC on October 3, 2016.

Ganheart alleges that she was again demoted in 2016 and that her former position was filled by a white employee. She then filed this pro se suit on January 3, 2017. The district court construed Ganheart's pleadings as raising five claims: three retaliation claims—one related to her 2014 reprimand and demotion, one to her performance evaluation, and one to her 2016 demotion; a hostile work environment claim; and a procedural due

3

process claim related to the Civil Service appeals process. The district court dismissed the 2014 retaliation claim with prejudice and dismissed all other claims without prejudice. Ganheart filed a new complaint re-raising her remaining claims. The district court dismissed these claims with prejudice, with the exception of Ganheart's 2016 demotion retaliation claim, which was dismissed without prejudice to give Ganheart an opportunity to pursue her administrative remedies. Ganheart appealed. We have jurisdiction over this appeal under 28 U.S.C. § 1291.[1]

## II

We review a district court's dismissal for failure to state a claim de novo.[2] To survive a Rule 12(b)(6) motion, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] "[P]ro se complaints are held to less stringent standards than formal pleadings drafted by lawyers"[4] but are nonetheless insufficient if they contain "only 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action.'"[5] We can affirm a 12(b)(6) dismissal "on any basis supported by the record."[6]

---

[1] *See United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949) ("That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit so far as the District Court was concerned."); *16 Front St., LLC v. Miss. Silicon, LLC*, 886 F.3d 549, 561 (5th Cir. 2018); *Linn v. Chivatero*, 714 F.2d 1278, 1280 (5th Cir. 1983) ("To say that [appellant] may bring a different action in the future is not to say that this action was not fully and finally disposed of below."); *see also Goode v. Central Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 625 (4th Cir. 2015) (stating that appellate jurisdiction exists over a dismissal without prejudice when the district court "clearly indicate[s] that no amendment could cure the defects in the complaint").

[2] *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

[5] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

[6] *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015) (quoting *Asadi v. GE Energy (USA), LLC*, 720 F.3d 620, 622 (5th Cir. 2013)).

No. 17-30813

## III

"Employment discrimination plaintiffs must exhaust administrative remedies" by "fil[ing] a timely charge with the EEOC and receiv[ing] a statutory notice of right to sue" "before pursuing claims in federal court."[7] After exhaustion, to state a prima facie claim for retaliation under Title VII a plaintiff must allege that (1) she "participated in an activity protected by Title VII;" (2) her "employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[8]

Title VII prohibits, among other things, employment discrimination on the basis of race and gender.[9]  Participation in a Title VII proceeding is "protected by Title VII," as is voicing opposition to an employment practice the employee reasonably believed was unlawful under Title VII.[10]  An employment action is "adverse" if it is objectively "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[11]  As to causation, "temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation,"[12] but the plaintiff must show that her participation in a protected activity was a but-for cause of the adverse action.[13]

---

[7] *Books A Million*, 296 F.3d at 378-79.

[8] *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

[9] *See* 42 U.S.C. § 2000e-2(a)(1).

[10] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

[11] *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)) (alteration in original).

[12] *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)) (emphasis omitted).

[13] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

No. 17-30813

## A

The district court properly dismissed Ganheart's retaliation claim related to her 2014 reprimand and demotion because she did not exhaust administrative remedies. An EEOC charge is timely when it is filed "within three hundred days after the alleged unlawful employment practice occurred."[14] Ganheart was allegedly demoted in May 2014 and received a reprimand letter in September 2014. Both events occurred more than 300 days before Ganheart filed her EEOC charge in November 2015. The charge is therefore not timely as to this claim.[15] Ganheart has not exhausted her administrative remedies and dismissal was proper.[16]

## B

The district court properly dismissed Ganheart's retaliation claim related to her performance evaluation. As an initial matter, we disagree with the district court's conclusion that Ganheart did not engage in any protected activities before the performance evaluation. Ganheart alleges that she complained of staffing "bias" in March 2014, circulated an email criticizing discriminatory hiring practices in April 2014, and "expressed [her] concerns regarding equal and fair treatment" "[a]t some point in 2014." Because these concerns relate to race and gender equality in the workplace, Ganheart's apparent belief that the Library's practices were unlawful was reasonable. Her statements in opposition to them were therefore protected activities.[17]

---

[14] 42 U.S.C. § 2000e-5(e)(1) (explaining that the time period is 300 days where, as here, "the person aggrieved has initially instituted proceedings with a State or local agency").

[15] *See id.*

[16] *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).

[17] *See Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (holding that "oppos[ing]" any practice that the employee reasonably believes to be prohibited by Title VII is protected activity under that statue (quoting 42 U.S.C. § 2000e-3(a))); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009) (holding that the statutory term "oppose" "carries its ordinary meaning").

No. 17-30813

However, we agree with the district court that Ganheart has not alleged that she suffered an adverse employment action. She claims that her final evaluator lowered her initial rating of "Exceeds" to "Competent." She also states that this particular evaluator had a "policy [] that no one should be rated higher tha[n] Competent." The mere application of that policy to Ganheart's performance review would not "dissuade a reasonable worker from making or supporting a charge of discrimination."[18] The performance evaluation was not an adverse employment action, and Ganheart cannot make out a prima facie retaliation claim based on it.

## C

Dismissal of the retaliation claim related to the 2016 demotion was also proper. Ganheart's EEOC charge describes only misconduct alleged to have occurred in 2014 and 2015. Ganheart argues that this second "demotion fell under the umbrella of" the charge. However, her EEOC charge specifically states that the "[l]atest" date on which the "discrimination took place" was July 15, 2015 and that the discrimination was not a "continuing action."

"The scope of inquiry of a court hearing in a Title VII action 'is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination.'"[19] We have deemed a claim unexhausted when the incident from which it arose was not alleged in the EEOC charge.[20] Similarly here, Ganheart complains of a separate, subsequent demotion that, based on her indication that the Library's actions were not "continuing," could not reasonably be expected to become a part of the EEOC's

---

[18] *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

[19] *Young v. City of Hous., Tex.*, 906 F.2d 177, 179 (5th Cir. 1990) (quoting *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir. 1970)).

[20] *See Fine v. GAF Chem. Co.*, 995 F.2d 576, 577-78 (5th Cir. 1993).

investigation into her charge.   Ganheart has not exhausted administrative remedies with respect to this claim.

Even if the claim were exhausted, Ganheart has failed to make out a prima facie case based on it.   The last protected activity in which Ganheart engaged was the filing of an EEOC charge in November 2015.[21]   The demotion occurred five months later.   Ganheart alleges no facts showing that any of her protected activities were a but-for cause of the demotion, and a five-month interval between a protected activity and an adverse employment consequence is too long to sustain a prima facie claim of causation based solely on temporal proximity.[22]

## D

The district court did not address Ganheart's allegation that she received a written warning in April 2015 in response to a complaint leveled against her by a co-worker and verbal notice of other complaints filed against her.   To the extent that it may form the basis of an independent retaliation claim the record is sufficiently developed to affirm the district court's dismissal of it.[23]   Even assuming that this warning constituted an adverse employment action, Ganheart alleges no facts tending to show that her complaints lodged in 2014 were a but-for cause of this April 2015 warning.[24]   Further, the significant time that elapsed between the protected activities and the warning is not "very close" temporal proximity on which she could rely to establish a prima facie

---

[21] *See Long*, 88 F.3d at 304 (holding that making a charge under Title VII is a protected activity).

[22] *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (citing with approval cases holding that three- and four-month intervals are insufficient to establish causation by temporal proximity); *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007).

[23] *See Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015) (holding that this court can affirm a 12(b)(6) dismissal "on any basis supported by the record").

[24] *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

case.[25]  The complaint does not plausibly allege a claim for retaliation on which relief could be granted.[26]

## IV

Ganheart exhausted her administrative remedies regarding her hostile work environment claim by including the substance of her allegations in the EEOC charge.[27]  To set forth a hostile work environment claim Ganheart must also establish, at a minimum, that "the harassment complained of was based on race" or gender and that it "affected a term, condition, or privilege of employment."[28]

Ganheart's pleadings provide no basis on which we could conclude that any harassment she experienced was "based on" race or gender.  Ganheart alleges that she was "micromanaged," criticized by co-workers and her supervisor, and told that there were complaints filed against her.  However, none of these comments or incidents invoked Ganheart's race or gender and, beyond conclusory allegations of mistreatment of other African-American employees, Ganheart provides no explanation of how the alleged harassment could be even implicitly tied to race or gender.

## V

Ganheart's procedural due process claim involves balancing Ganheart's interest in, and risk of erroneous depravation from, the procedures employed by the City against the City's interest in avoiding additional procedures.[29]  Ganheart's pleadings do not plausibly allege sufficient factual content for us to

---

[25] *See Breeden*, 532 U.S. at 273; *Strong*, 482 F.3d at 808.

[26] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[27] *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (noting that a hostile work environment plaintiff must exhaust administrative remedies with the EEOC before filing suit), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

[28] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

[29] *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

grant relief on her claim.[30]  She alleges only that on two unspecified occasions she was denied access to requested documents and that she did not receive the City's motion to dismiss her reprimand letter appeal before the Civil Service Commission.  Because these facts alone provide us with no basis on which to weigh the constitutionality of the procedures employed by the Civil Service Commission, her claim amounts only to a "'naked assertion[]'" of a due process violation "devoid of 'further factual enhancement.'"[31]   The district court correctly dismissed it.

*     *     *

For these reasons, we AFFIRM the judgment of the district court.

---

[30] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[31] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).