**REVISED December 10, 2019**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-10042

United States Court of Appeals
Fifth Circuit

**FILED**
December 9, 2019

Lyle W. Cayce
Clerk

REBECCA MUSSER,

> Plaintiff - Appellant

v.

PAUL QUINN COLLEGE,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before CLEMENT, ELROD, and DUNCAN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

After she was fired, Rebecca Musser sued her former employer, Paul Quinn College, for retaliation under the False Claims Act. The college maintains that it had legitimate reasons for terminating Musser's employment, including that her position was eliminated. But Musser claims that the college retaliated against her for internally reporting allegedly fraudulent practices by the college's chief financial officer in securing federal grants. The district court granted summary judgment to Paul Quinn College

No. 19-10042

because Musser failed to establish that the stated reason for her termination was pretext for retaliation. We affirm the district court's judgment.

## FACTS AND PROCEEDINGS

Paul Quinn College ("PQC") is a private, historically black college in Dallas, Texas. A major source of PQC's funding is federal grants authorized by Title III of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1051 *et seq.*, which provides financial assistance to historically black colleges and universities. In 2007, during a period of financial and organizational difficulty for the college, PQC hired Michael Sorrell as president and tasked him with turning things around. One of Sorrell's first actions was to hire Antwane Owens and his company, Excellence Through Insight, Inc. ("ETI"), to manage and oversee the college's finances. Owens became the acting chief financial officer of the college, but his position was only temporary while PQC searched for a permanent CFO.

ETI hired Musser as an independent contractor in March 2010. Although Musser was not a certified public accountant and had no experience with federal grants or nonprofit educational institutions, she was tasked with providing financial and accounting services to PQC as the college's interim controller. Her job duties included overseeing the business office, providing information for grant applications, handling accounts payable, reviewing grant reports, and preparing information for auditors. In performing her duties, Musser worked with employees of eCratchit, an accounting firm utilized by PQC to assist with bookkeeping functions. After Musser's contract with ETI ended, PQC hired her directly as its full-time controller, and she continued to work under the supervision of Owens.

Almost immediately after Musser's employment began, there were problems with her performance. Between September 2011 through early November 2011, Owens repeatedly counseled Musser about her

2

No. 19-10042

communicating directly with staff and students without his approval, her failure to supervise an employee in the business office who was submitting inaccurate timesheets, her inability to explain financial issues clearly and concisely, and her failure to accomplish assigned tasks. These issues were no secret to Sorrell and his chief of staff, Lori Price.

Owens's problems with Musser eventually became mutual. On November 10, 2011, Musser sent an e-mail to Owens questioning whether he performed federal grant drawdowns properly. Musser admits that she did not expressly accuse Owens of fraud or illegal activity in this e-mail. Meanwhile, Owens and Sorrell were attending an out-of-town conference. While at the conference, Owens and Sorrell discussed Musser's poor performance. And on November 11, 2011, Owens submitted a memorandum to Sorrell recommending that Musser be fired at the end of the year. Sorrell agreed.

That same day, Musser requested a meeting with Sorrell so she could share some "important information" with him. Sorrell did not immediately respond to her request. A few days later, on November 14, Musser e-mailed Owens explaining that there appeared to be a discrepancy in the amount of grant money that PQC was claiming versus the amount that PQC was spending. Owens asked Musser to prepare a spreadsheet showing the discrepancy, but he could not understand the spreadsheet that she created.

On November 15, Musser followed up on her request for a meeting with Sorrell. She explained that she wanted to alert his attention to something that could be a "very serious risk for the college." Sorrell was out of town, but he told her that she could meet with Price in the meantime. Later that day, Musser and Owens agreed to meet for coffee the following morning. During their meeting on the morning of November 16, Owens informed Musser that her employment would be terminated at the end of the year.

3

On November 17, Musser met with Price and expressed her apprehensions about Owens's performance of his duties as CFO. Musser then drafted a memorandum to Sorrell setting out all of her concerns. She delivered the memorandum to Sorrell on November 18. Unlike her previous communications, Musser's memorandum explicitly accused Owens of defrauding the federal government to secure federal funds.

Upon receiving Musser's report, Sorrell immediately notified PQC's Board of Trustees, and the Board hired a law firm to conduct an independent investigation into her allegations. On November 20, at the Board's directive, Sorrell placed both Owens and Musser on administrative leave with full pay and benefits pending the results of the investigation. Sorrell was not involved in the investigation, but he learned in January 2012 that the investigation had concluded and no further action in response to Musser's report was recommended. The Board directed Sorrell to continue the search for a new CFO and maintain Musser on paid administrative leave for the time being.

Shortly after the investigation concluded, litigation between Owens and Musser ensued. On February 13, 2012, Owens sued Musser for falsely accusing him of criminal conduct and violating federal law. In response, Musser asserted counterclaims for defamation against Owens. Owens later added PQC as a defendant, alleging that PQC was vicariously liable for Musser. The trial court granted summary judgment to Musser on all of Owens's claims in October 2013, and Owens settled Musser's counterclaims a few months later. The court entered a final judgment against Owens and in favor of Musser and PQC on April 21, 2014. Musser remained on paid administrative leave for the duration of the Owens litigation. And because she was an employee, PQC paid her legal bills.

Four months later, on August 19, 2014, Price sent Musser a letter informing her that her administrative leave had ended and that her

employment would be terminated at the end of the month. The letter stated that Musser's services were no longer needed because "the business office has been reorganized and the position of controller has been eliminated."

Musser filed this lawsuit against PQC on August 16, 2017. She advanced a single claim for retaliation in violation of the False Claims Act, challenging the August 2014 decision to terminate her employment. The district court held that Musser failed to establish that the proffered reason for her termination was pretext for retaliation and granted summary judgment to PQC. Musser now appeals.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 225 (5th Cir. 2017). "Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## DISCUSSION

The False Claims Act ("FCA") makes it illegal to knowingly present to the federal government a false or fraudulent claim for payment. 31 U.S.C. § 3729(a)(1)(A). To encourage those with knowledge of fraud to come forward, the FCA contains a "whistleblower" provision. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). In particular, the statute provides a cause of action for employees who experience adverse employment actions "because of lawful acts done by the employee . . . in furtherance of an action under [the FCA] or other efforts to stop [one] or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1).

No. 19-10042

We apply the familiar *McDonnell Douglas* burden-shifting framework to FCA retaliation claims. *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 240 (5th Cir. 2019); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). "Under this framework, the employee must first establish a prima facie case of retaliation by showing: (1) that he engaged in protected activity; (2) that the employer knew about the protected activity; and (3) retaliation because of the protected activity." *Garcia*, 938 F.3d at 241. If the employee establishes a prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Id.* (quoting *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 332 (5th Cir. 2017) (per curiam)). After the employer articulates a legitimate reason, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.* (quoting *Solvay*, 871 F.3d at 332).

Like the district court, we assume without deciding that Musser established a prima facie case of retaliation. The burden thus shifts to PQC to proffer a legitimate, non-retaliatory reason for Musser's termination. "This burden is one of production, not persuasion," and it involves no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). PQC may meet this burden by setting forth, through admissible evidence, "reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful [retaliation] was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

PQC offered evidence of a legitimate, non-retaliatory reason for Musser's termination: a reorganization of the college's business office resulting in the elimination of Musser's position. Elimination of an employee's position as a result of a reorganization or a reduction-in-force is a legitimate, non-retaliatory reason for the employee's termination. *See, e.g.*, *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 176 (5th Cir. 2016) (holding company-wide reduction-in-

force was a legitimate, non-retaliatory reason for termination); *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356–57 (5th Cir. 2007) (holding reorganization of a department that resulted in elimination of the plaintiff's position was a legitimate, non-discriminatory reason for termination). PQC also produced evidence of an additional reason for Musser's termination that is not inconsistent with the first: her poor performance. "Job performance is a legitimate, non-retaliatory reason for termination." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002)).

Because PQC articulated legitimate, non-retaliatory reasons for its decision, the burden shifts back to Musser to establish that PQC's proffered reasons are actually pretext for retaliation, which Musser "accomplishes by showing that the adverse action would not have occurred 'but for' [PQC's] retaliatory motive." *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). In order to avoid summary judgment, Musser must show that there is a "conflict in substantial evidence" on this ultimate issue. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Long*, 88 F.3d at 308).

A review of our prior decisions in retaliation cases sheds light on the quality of evidence needed to survive summary judgment at the pretext stage. In *Solvay*, for example, we held that the plaintiffs' evidence of being terminated three-and-a-half months after making complaints of FCA violations combined with their positive performance reviews prior to their terminations was not enough to create a dispute of material fact regarding pretext. *Solvay*, 871 F.3d

at 334; *see also Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (affirming the district court's grant of summary judgment because the plaintiff's only evidence of pretext was temporal proximity).

On the other hand, in *Garcia*, we held that the plaintiff pointed to enough evidence of pretext to survive summary judgment. *Garcia*, 938 F.3d at 244. The plaintiff's evidence in that case consisted of temporal proximity between his protected activity and termination, his dispute of facts leading up to his termination, disparate treatment of a similarly situated employee, harassment from his supervisor after the company knew of his protected activity, the stated reason for the termination had been known to the company for years, and the company stood to lose millions of dollars if its conduct was discovered. *Id.*; *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999) (holding that evidence of tight temporal proximity, unfounded performance concerns, warnings from other employees not to engage in the protected activity, and disparate treatment was enough to create an issue of fact regarding pretext).[1]

Musser's evidence falls far short of the body of evidence described in *Garcia*. On appeal, she argues that the following evidence demonstrates that PQC's explanation for terminating her was pretext for retaliation: (1) her position was eliminated while she was on administrative leave as a result of her protected activity; (2) PQC's proffered explanation is unworthy of credence because there is conflicting testimony regarding who assumed her job duties and no evidence that eliminating her position saved the college money; (3) Sorrell had a retaliatory motive because he was friends with Owens;

---

[1] In determining whether Musser has produced sufficient evidence of pretext to survive summary judgment, cases involving retaliation claims under Title VII and the Age Discrimination in Employment Act inform our analysis because such claims involve the same but-for causation requirement at issue in FCA retaliation claims. *See Solvay*, 871 F.3d at 334 n.17 (citing *Nassar*, 570 U.S. at 350–52).

No. 19-10042

(4) PQC presented shifting reasons for her termination; and (5) temporal proximity between the finality of the litigation against Owens and her termination. Taking this evidence in its totality and in the light most favorable to Musser, we find that Musser fails to create a genuine dispute as to whether she would not have been fired but for PQC's alleged retaliation.

First, Musser attempts to establish causation by arguing that PQC would not have eliminated her position had she not engaged in protected activity. Essentially, Musser argues that because PQC discovered that her position was unnecessary while she was on leave, and because she was initially placed on leave to allow the Board to investigate her report of suspected FCA violations, she was fired "because of" her protected activity. Musser cites no authority to support such an attenuated theory of causation in retaliation cases.[2] And an examination of the purpose of the FCA's whistleblower provision reveals the flaw in Musser's argument.

The purpose of the whistleblower provision is to promote enforcement of the FCA by "assur[ing] those who may be considering exposing fraud that they are legally protected from retaliatory acts." S. Rep. No. 99-345, at 34 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5299. For this reason, the statute prohibits an employer from retaliating against an employee because of the employee's protected activity; it does not prevent the employer from taking

---

[2] Other circuit courts have rejected similar arguments. *See, e.g.*, *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1242–43 (11th Cir. 2010) (employer did not violate the Family and Medical Leave Act by demoting employee for professional deficiencies discovered while employee was on leave, even if employer would not have discovered those deficiencies had employee not been on leave); *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001) ("The fact that the leave permitted the employer to discover the problems can not logically be a bar to the employer's ability to fire the deficient employee."); *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 424–25 & 425 n.9 (1st Cir. 1996) (rejecting employee's argument that "Title VII prohibits an employer from dismissing an employee while she is on maternity leave even if the employer, in the process of rationalizing its work force, discovers that her position is redundant and eliminates it for that reason").

adverse employment actions for legitimate reasons unrelated to the protected activity. In the latter situation, the employer's decision is motivated not by the protected activity, but by other reasons that would have prompted the adverse action regardless of whether the employee engaged in protected activity. Put simply, the fact that Musser's position was eliminated while she was on leave after reporting suspected FCA violations does not create a dispute as to whether PQC's "*desire to retaliate* was the but-for cause of the challenged employment action." *Nassar*, 570 U.S. at 352 (emphasis added).

Second, Musser fails to cast doubt on PQC's explanation that her position was eliminated as part of a legitimate reorganization. There is no conflict in testimony regarding the reallocation of Musser's job duties. Sorrell testified that Musser's job "was capable of being absorbed in several places, one of them being eCratchit," the outside accounting firm used by PQC throughout the course of Musser's employment. Price testified that she began working with eCratchit in Musser's place. Together, Price and eCratchit assumed Musser's job duties. There is no dispute that PQC has not hired a new controller to replace Musser. *See Dulin v. Dover Elevator Co.*, 139 F.3d 898 (5th Cir. 1998) (unpublished) ("[A]pplicable case law holds that when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced.").

Musser also faults Sorrell for being uncertain whether the decision to eliminate her position and redistribute her duties saved the college any money. But PQC never claimed to eliminate Musser's position solely for financial reasons. In the years immediately before and after Musser's tenure, PQC was in the midst of a financial and organizational overhaul. Sorrell and the Board regularly discussed restructuring the college's business office—not only to "save money" but also to increase efficiency by "streamlining the staff." And even if the sole reason for PQC's decision was to save money, Musser's

argument is unsound because it challenges the wisdom of PQC's decision rather than the sincerity of its stated motivation. "Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." *LeMaire*, 480 F.3d at 391. Evidence that the decision to eliminate Musser's position did not ultimately achieve cost savings "would establish only that the proffered justification was mistaken, not dishonest, which is the key to pretext." *Easterling v. Tensas Par. Sch. Bd.*, 682 F. App'x 318, 323 (5th Cir. 2017) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993)).

Third, Musser asserts that Sorrell had a retaliatory motive because he was friends with Owens. The only evidence Musser cites to support this argument is an e-mail conversation between Owens and Sorrell, in which Sorrell agreed to waive any conflict of interest to allow PQC's outside counsel to represent Owens in his lawsuit against Musser. This waiver is insufficient to demonstrate that Sorrell harbored a retaliatory motive against Musser.

Fourth, Musser argues that PQC's "shifting reasons" for her termination support an inference of pretext. It is true that "[a]n employer's inconsistent explanations for an employment decision" may give rise to an inference of pretext in some cases. *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017); *accord Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007). But in those cases, the employers gave fundamentally different reasons for their decisions on appeal than they did in the district court or before litigation commenced. *See Hassen v. Ruston La. Hosp. Co.*, 932 F.3d 353, 356–57 (5th Cir. 2019) (citing *Caldwell*, 850 F.3d at 242; *Burrell*, 482 F.3d at 413). In contrast, PQC's story has not changed during the course of this litigation. Both at the district court and on appeal, PQC explained that Sorrell initially decided to fire Musser in November 2011 for poor performance, and Musser was ultimately terminated in August 2014 after PQC determined that

her position was unnecessary and eliminated it. These reasons are not inconsistent or contradictory. Indeed, Musser's history of poor performance could have contributed to PQC's decision to eliminate the controller position.

Finally, Musser's temporal-proximity argument is unavailing. We have previously acknowledged that "temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015). But "[t]emporal proximity alone is insufficient" to survive summary judgment at the pretext stage in the absence of "other significant evidence of pretext." *Solvay*, 871 F.3d at 334 (first quoting *Strong*, 482 F.3d at 808, and then quoting *Shackelford*, 190 F.3d at 409).

As explained above, Musser has not provided "other significant evidence of pretext." *Shackelford*, 190 F.3d at 409. "Thus, [she] is left with no evidence of retaliation save temporal proximity." *Strong*, 482 F.3d at 808. Even if she were to establish "suspicious timing of [her] termination in tight proximity to her protected activity,"[3] *Shackelford*, 190 F.3d at 409, temporal proximity standing alone is insufficient to satisfy her burden at the pretext stage, *see Strong*, 482 F.3d at 808. Therefore, we need not consider the merits of her temporal-proximity argument.

---

[3] For her temporal-proximity argument, Musser relies on the timing between the conclusion of the Owens litigation and the date PQC notified her of her termination in 2014. But even if we were to consider Musser's defense of Owens's lawsuit against her and prosecution of her counterclaims against him as "protected activity" under the FCA, which is dubious, the date to which her termination must be temporally proximate is the date when PQC first learned that she had engaged in some protected activity. *See Harville v. City of Houston*, 935 F.3d 404, 414 (5th Cir. 2019). "[T]he temporal clock does not 're-start' with each protected activity." *Id.* (quoting *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 429 n.23 (5th Cir. 2017)). Thus, the relevant protected activity here is Musser's internal reporting of suspected FCA violations, which occurred when she delivered her memorandum to Sorrell on November 18, 2011.

No. 19-10042

## CONCLUSION

To sum up, Musser failed to show that a reasonable juror could conclude that PQC fired her in retaliation for engaging in protected activity. Because PQC offered a non-retaliatory explanation for Musser's termination, and because Musser presented no evidence of pretext, the district court's decision granting summary judgment in favor of PQC is AFFIRMED.[4]

---

[4] Because we conclude that Musser failed to produce sufficient evidence of pretext to survive summary judgment, we need not and do not address PQC's additional argument that Musser's suit is barred by the three-year statute of limitations applicable to FCA retaliation claims. *See* 31 U.S.C. § 3730(h)(3).