# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2022

Lyle W. Cayce
Clerk

No. 20-20620
Summary Calendar

Kelly Vandenberg,

*Plaintiff—Appellant*,

*versus*

University of Saint Thomas, also known as University of St. Thomas (Houston),

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-379

Before Richman, *Chief Judge*, and Haynes and Duncan, *Circuit Judges*.

Per Curiam:[*]

Dr. Kelly Vandenberg, a former employee of the University of Saint Thomas School of Nursing, sued the University of Saint Thomas (St. Thomas), asserting a claim of race discrimination under Title VII of the Civil

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20620

Rights Act of 1964 (Title VII) and 42 U.S.C. § 1981, and a claim of retaliation under Title VII. The district court granted summary judgment to St. Thomas on both claims and dismissed the suit. Vandenberg appeals regarding the retaliation claim. We affirm.

**I**

Dr. Kelly Vandenberg began working as a faculty member in the St. Thomas School of Nursing in May 2012 pursuant to a twelve-month, non-tenure contract. In addition to teaching as an Assistant Professor, Vandenberg served as the course coordinator for some of her courses. The Associate Dean of the School of Nursing, Dr. Angelina Chambers, was Vandenberg's immediate supervisor. Chambers answered to the Dean of the School of Nursing, Poldi Tschirch. As the Dean, Tschirch made all hiring and firing decisions for the School of Nursing. Tschirch, and therefore St. Thomas, renewed Vandenberg's contract for the academic years from fall 2012 to spring 2016, but it declined to do so after that time.

As a new Assistant Professor, Vandenberg was rated as "In Good Standing" for the 2012 to 2013 academic year. Following her initial review, however, Vandenberg began to have performance issues. In spring 2014, students voiced concerns about Vandenberg behaving unprofessionally. They stated that she was belittling, intimidating, and degrading to students, as well as that her class environment was not conducive to St. Thomas's "holistic learning" approach. In the spring and fall of 2014, Vandenberg received the lowest course evaluation score of all faculty members. Although Vandenberg was ranked "In Good Standing" for the 2013 to 2014 academic year, she was informally counseled about her performance issues.

In March 2015, the School of Nursing established formal expectations for all full-time faculty that were "aligned with the school's holistic philosophy and collaborative organizational model." Tschirch individually

reviewed the performance expectations with Vandenberg that month. In September 2015, the performance expectations were voted on and accepted by all faculty members, including Vandenberg. Vandenberg agreed to abide by them. Nevertheless, she continued to have performance issues. In summer 2015, Vandenberg again received the lowest course evaluation score of all faculty members, and Tschirch's concerns about Vandenberg's performance continued to increase.

As a result, on November 23, 2015, Vandenberg was placed on a Performance Improvement Plan (PIP). The PIP was prepared by Chambers at the direction of Tschirch, and it was reviewed, edited, and finalized by Tschirch. The PIP addressed Vandenberg's performance issues dating back to 2013, including: ineffective decision-making, failure to align with the School of Nursing's expectations, ineffective collaboration with other faculty, ineffective communication with students, and inability to resolve student conflicts. The PIP also included specific examples such as failing to allot time for a clinical course; switching in-person lectures to online, which Vandenberg concedes resulted in multiple student complaints; and planning a study abroad trip without submitting a completed application or arranging who would cover her courses. The PIP concluded that "[i]f no sustained level of improved performance is noted[,] then further discussion will ensue regarding [Vandenberg's] future employment at [St. Thomas]." Vandenberg immediately met with Chambers and the Associate Vice President of Human Resources, Randy Graham, to review the PIP. Vandenberg was removed from her position as a course coordinator, although she continued teaching as an Assistant Professor.

Vandenberg believed that the PIP contained "false accusations by Chambers that pre-dated [Vandenberg's] good performance reviews," and she began "reflecting on the strange relationship between Chambers and [Dr. Lucindra] Campbell-Law." Campbell-Law joined the School of Nursing

faculty in June 2013, the year after Vandenberg started. Vandenberg believed that "upon returning from a [school] trip to Haiti in 2015" with Campbell-Law, Chambers's opinion of Vandenberg "inexplicably changed." As Vandenberg describes it, Chambers and Campbell-Law "were joined at the hip and allied against her." Upon their return from Haiti, Vandenberg claims that Campbell-Law and Chambers "began forwarding or blind copying" their correspondence with Vandenberg to the other. Vandenberg interpreted this as the two "working together on some kind of a campaign against Vandenberg." "From Vandenberg's perspective, it appeared that Chambers was giving favorable treatment to Campbell-Law [and they were working together against Vandenberg] because of the one characteristic that Chambers and Campbell-Law shared: race." Campbell-Law, like Chambers, is African-American, and during Vandenberg's employment, Chambers and Campbell-Law were the only two faculty members in the School of Nursing of that race.

Accordingly, on December 21, 2015, Vandenberg wrote a letter to Tschirch, Chambers, and Graham (the HR Complaint), alleging that the allegations in the PIP were false and racially motivated. This was the first Vandenberg complained of discrimination, and she admits that no one at St. Thomas ever commented on her race. At the request of Graham, Chambers responded to the complaint on January 13, 2016. Chambers wrote that Vandenberg's "allegations of racially biased behavior on [Chambers's] part towards [Vandenberg] are false and unsubstantiated" and that "[Vandenberg's] written comments are libelous and rise to the level of defamation of character."

Graham met with Vandenberg for the first time on January 22, 2016 to investigate the HR Complaint. That same day, Tschirch met with Dominic Aquila, former Provost and Vice President for Academic Affairs, and Chambers. Tschirch and Aquila both attest via sworn declaration that,

at that meeting, Tschirch informed Aquila of Tschirch's decision not to renew Vandenberg's contract. They both attest that Tschirch documented her decision in a memorandum (the January 22 Memorandum) that Tschirch provided to Aquila in hard copy that day. They also both attest that, at that time, Tschirch incorrectly dated the memorandum January 22, 2015, rather than January 22, 2016.

Concerned that Graham's investigation of the HR Complaint was going "nowhere," on February 23, 2016, Vandenberg filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the EEOC Charge). She alleged that St. Thomas had discriminated against her based on her race and retaliated against her for engaging in protected activities while favoring Campbell-Law. Graham received the EEOC Charge on March 3, 2016. On April 3, 2016, Vandenberg emailed an assistant in the School of Nursing inquiring about her annual performance evaluation. The next day, Chambers, rather than the assistant, responded that Vandenberg's performance evaluation was "on hold, pending final resolution of [Vandenberg's] current HR complaint."

On April 25, 2016, Tschirch met with Graham. The next day, Tschirch emailed Graham "Requested Documents," including the School of Nursing's "Performance Expectations for a Collaborative Organization" and the January 22 Memorandum. Metadata for the January 22 Memorandum indicates its "Best Creation Date" is April 26, not January 22. Tschirch and Aquila both attest that because Tschirch revised the memorandum on April 26 to fix the typographical error in the date year to 2016 from 2015—with no other revisions or modifications—and "re-saved the memorandum with the correct date under a filename reflecting the correct year of 2016," the metadata changed to reflect the date the document was re-saved rather than its original date of creation.

No. 20-20620

Vandenberg remained employed as an Assistant Professor until May 13, 2016, just before St. Thomas's May 15 deadline to reissue annual contracts for the upcoming academic year. Vandenberg's "End of Employment Form" indicated that Vandenberg's employment was ending because her "contract [was] not renewed." On July 14, 2016, Vandenberg updated the EEOC Charge to add allegations of discrimination and retaliation based on the nonrenewal of her contract.

In February 2018, Vandenberg filed suit in federal district court, alleging discrimination based on disparate treatment and a mixed-motive theory under Title VII and § 1981, as well as retaliation under Title VII. St. Thomas moved for summary judgment on all claims, and the district court granted the motion and dismissed the suit. Vandenberg appealed to this court, focusing solely on the retaliation claim.

## II

Vandenberg contends that the district court improperly granted summary judgment on her Title VII retaliation claim. We review a district court's grant of summary judgment de novo.[1] Summary judgment is appropriate if, viewing all the facts and evidence in the light most favorable to the nonmovant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine dispute of material fact exists when a fact "might affect the outcome of the suit under the governing law" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

---

[1] *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 (5th Cir. 2020).

[2] *Id.* at 578-79 (quoting FED. R. CIV. P. 56(a)).

[3] *Id.* at 578 (quoting *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013)).

No. 20-20620

Vandenberg's Title VII claim relies on circumstantial evidence and is therefore subject to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[4]   Under that framework, Vandenberg has the initial burden to establish a prima facie case of retaliation under Title VII.[5] She must show that (1) she engaged in a Title VII protected activity; (2) she was subject to an adverse employment action; and (3) "a causal connection exists between the protected activity and the adverse employment action."[6]   If Vandenberg establishes a prima facie case, she creates a presumption of discrimination.[7]   That shifts the burden to St. Thomas to articulate "a legitimate, non-discriminatory reason for the adverse employment action."[8]   If St. Thomas articulates such a reason, the burden shifts back to Vandenberg to demonstrate that St. Thomas's proffered reason is a pretext for discrimination.[9]

## A

The first two elements of a prima facie case of retaliation are undisputed: Vandenberg engaged in a protected activity when she filed the HR Complaint (and later the EEOC Charge), and Vandenberg suffered a materially adverse action—nonrenewal of her contract.  As to the third, the

---

[4] *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (first citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 425, 427 (5th Cir. 2000); and then citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[5] *Id.*

[6] *Id.* (quoting *Byers*, 209 F.3d at 427).

[7] *Harville v. City of Hous.*, 945 F.3d 870, 875 (5th Cir. 2019) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

[8] *Brown*, 969 F.3d at 577 (internal quotation marks omitted) (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

[9] *Id.* (citing *Patrick*, 394 F.3d at 315).

four-week gap between Vandenberg filing the HR Complaint and St. Thomas's staff deciding not to renew Vandenberg's contract is evidence of a causal connection at the prima facie stage.[10]   Because Vandenberg established a prima facie case of retaliation, the burden shifts to St. Thomas to provide a legitimate, non-discriminatory reason for the nonrenewal of Vandenberg's contract.

**B**

An employer's subjective reason for an adverse action will satisfy its burden "only if the employer articulates a clear and reasonably specific basis for its subjective assessment,"[11] so as to provide sufficient clarity to afford the former employee a "full and fair opportunity to demonstrate pretext."[12] "This does not mean that an employer may not rely on subjective reasons for its personnel decisions."[13]   Rather, an "employer must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee."[14]   In *Patrick v. Ridge*,[15] an employer's explanation that

---

[10] *Id.* (holding that a plaintiff can meet her "burden of causation simply by showing close enough timing between [her] protected activity and [her] adverse employment action" (quoting *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019))); *cf. id.* at 578 (holding that an "approximately six-to-seven-week gap" was sufficient to show a causal connection "based on timing alone" at the prima facie stage); *Cristain v. Hunter Bldgs. & Mfg., L.P.*, 908 F.3d 962, 964 (5th Cir. 2018) (holding that a two-week gap constituted "stark temporal proximity").

[11] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007) (first citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981); and then citing *Patrick*, 394 F.3d at 316-17).

[12] *Patrick*, 394 F.3d at 319 n.34 (quoting *Burdine*, 450 U.S. at 256).

[13] *Id.* at 317 (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001)).

[14] *Id.*

[15] 394 F.3d 311.

the employee "was not 'sufficiently suited' for the position—even including [the] belief that she would not 'fit in'"—did not, as a matter of law, qualify as a legitimate, nondiscriminatory reason because it was "at least as consistent with discriminatory intent as it [was] with nondiscriminatory intent."[16]  If the employer had included more detail, such as that the employee was not sufficiently suited "because of her experience, credentials, attitude, or some other such articulable characteristic," the employer's reason "might have" been sufficient.[17]

In its motion for summary judgment, St. Thomas argued that Tschirch decided not to renew Vandenberg's contract "because—despite repeated feedback and counseling—Vandenberg had continuing problem patterns and did not embrace the School of Nursing's holistic and collaborative approach."  The university cited specific examples, such as Vandenberg's "history of poor student interactions and students' recurrent complaints."  On appeal, St. Thomas adds that Vandenberg did not meet "expectations as to communication, conflict engagement in terms of addressing student concerns and resolving course issues, and decision making."  In support, the university cites the transcripts of Tschirch's and Vandenberg's depositions and the PIP—all included as exhibits to the motion for summary judgment.  They show issues with Vandenberg such as "numerous students" complaining about her, Vandenberg receiving "the lowest course evaluation scores among all faculty members in multiple semesters," and Vandenberg repeatedly failing to adhere to the School of Nursing's processes.  This all constitutes sufficient detail under *Patrick*, and thus St. Thomas's explanation, as a matter of law, qualifies as a legitimate

---

[16] *Id.* at 317.

[17] *Id.*

No. 20-20620

reason for not renewing Vandenberg's contract.[18] The detailed reason is also nondiscriminatory because it relates to performance issues and failure to comply with established expectations.[19] Therefore, the burden shifts back to Vandenberg to demonstrate that St. Thomas's proffered reason is a pretext for discrimination.

## C

At the pretext stage, Vandenberg must show "but-for causation, which requires more than mere temporal proximity."[20] Ultimately, in order to survive a motion for summary judgment, Vandenberg's evidence of pretext "must show a conflict in substantial evidence on the question of whether [St. Thomas] would not have" failed to renew her contract *but for* the HR Complaint or EEOC Charge.[21] "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [people] in the exercise of impartial judgment might reach different conclusions."[22]

Vandenberg contends that St. Thomas's reason is pretextual because the reason "shifted" between the HR Complaint, the EEOC Charge, and the

---

[18] *See id.*

[19] *Cf. Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016) ("Job performance is a legitimate reason for termination." (ellipses omitted) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007))).

[20] *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)).

[21] *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (internal quotation marks omitted) (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)).

[22] *Id.* (quoting *Musser*, 944 F.3d at 561-62).

decision to not renew her contract.[23]  Vandenberg cites *Burton v. Freescale Semiconductor, Inc.*[24] in support.  In *Burton*, after deciding to fire an employee, the employer "acted to create an exculpatory paper trail" by "directly solicit[ing the employee's] supervisors to provide 'documentation.'"[25]  A supervisor responded with an email that began with "Here is what I have on Nicole Burton" and set forth "a laundry list of violations to justify the predetermined decision to terminate Burton."[26]  It appeared that the employee's "only truly negative performance review was completed and submitted just after the decision to fire her and was provided to [the employer's decisionmaker] after he requested documentation."[27]  We concluded that a fair-minded juror could reasonably conclude there was evidence of pretext.[28]

Here, after the April 26, 2016 meeting, Tschirch emailed Graham to provide the "Requested Documents"—the School of Nursing Performance Expectations and the January 22 Memorandum.  The metadata for the January 22 Memorandum reflects a "Best Creation Date" of April 26, rather than January 22 as Tschirch and Aquila attest.  Viewing the metadata and testimonial evidence in the light most favorable to Vandenberg, there is a conflict in substantial evidence as to whether the January 22 Memorandum

---

[23] *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 347 (5th Cir. 2019) ("[I]t is well-accepted in employment law—and the law more generally—that inconsistent explanations and changing requirements undermine a party's credibility." (citations omitted)).

[24] 798 F.3d 222 (5th Cir. 2015).

[25] *Id.* at 237.

[26] *Id.* (brackets and internal quotation marks omitted) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 582 (5th Cir. 2003)).

[27] *Id.* (emphasis omitted).

[28] *Id.*

was created on January 22 or April 26, and therefore whether Graham, Tschirch, and Chambers were creating an exculpatory paper trail on April 26. Regardless, Vandenberg cannot establish that either the HR Complaint or the EEOC Charge was the but-for cause of her contract nonrenewal. Unlike in *Burton*, there is evidence of Vandenberg's underperformance dated before the December 21, 2015 HR Complaint and February 23, 2016 EEOC Charge.[29] This includes the detailed PIP in November 23, 2015; testimony of student complaints in spring 2014; and testimony that Vandenberg received the lowest course and teacher mean scores out of all faculty members in the spring 2014 semester.

Vandenberg also attempts to establish pretext under a "cat's paw" theory of liability. "Plaintiffs may use a cat's paw theory to prove causation when they cannot show the official decisionmaker had a retaliatory motive, but can show that another individual influenced that decisionmaker."[30] To establish this theory of liability, Vandenberg "must show that [a] person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action."[31] Regardless of whether Chambers's statements constitute retaliatory animus, Vandenberg cannot establish a conflict in substantial evidence regarding whether Chambers used Tschirch to bring about the nonrenewal of Vandenberg's contract.

Vandenberg contends that the cat's paw theory applies because "Tschirch's communications and memos all reflect that Tschirch *and* Chambers made the decision to fire Vandenberg together." But for the cat's

---

[29] *See id.*

[30] *E.E.O.C. v. EmCare, Inc.*, 857 F.3d 678, 684 n.3 (5th Cir. 2017) (citing *Zamora v. City of Hous.*, 798 F.3d 326, 331 (5th Cir. 2015)).

[31] *Zamora*, 798 F.3d at 331.

paw theory to apply, Vandenberg must establish that Tschirch acted as a mere "rubber stamp" for Chambers.[32]    While Chambers was asked to prepare the PIP, Tschirch reviewed, edited, and finalized it.    Further, Tschirch's decision not to renew Vandenberg's contract was based on her own observations of Vandenberg's performance patterns and evaluations of course data.    Thus, Tschirch acted as more than a mere rubber stamp for Chambers, and the cat's paw theory does not apply.

Accordingly, Vandenberg's evidence of pretext does not show a conflict in substantial evidence as to whether St. Thomas would have renewed Vandenberg's contract but for the HR Complaint or EEOC Charge.

*    *    *

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to St. Thomas.

---

[32] *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226-27 (5th Cir. 2001)).