# United States Court of Appeals for the Fifth Circuit

————————

No. 23-50747

————————

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2024

Lyle W. Cayce
Clerk

Jermaine Irby,

*Plaintiff—Appellant*,

*versus*

Christine Wormuth, *Secretary of the Department of the Army*,

*Defendant—Appellee*.

——————————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:21-CV-1143

——————————————————————————

Before Clement, Graves, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Jermaine Irby sued the Department of the Army through its Secretary, Christine Wormuth, for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. The district court granted summary judgment in favor of the Army after finding that Irby failed to create a genuine dispute of material fact as to whether the Army's rationale for its

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

employment decisions was pretextual. Because we agree that Irby has failed to adequately rebut the Army's non-retaliatory rationale, we AFFIRM.

## I.

In 2013, Irby became a civilian employee of the Army working for the Sexual Harassment Assault Response Program (SHARP) at Fort Cavazos (known then as Fort Hood) in Texas. Over a year later, Irby became a trainer and instructor for SHARP, and his job duties included coordinating classroom trainings, facilitating operations within the classroom, and vetting training materials. In March 2015, Jeffrey Gorres became the program manager of SHARP and started supervising Irby.

In June 2015, Irby and another colleague got into a heated exchange that allegedly led Irby's colleague to grab his arm. Irby reported this event to Gorres, who allegedly did nothing in response. A few months later, in August 2015, Irby filed an Equal Employment Opportunity (EEO) complaint against Gorres based on the June incident and an allegation that Gorres engaged in sex discrimination against Irby. This EEO complaint is the protected activity against which Gorres and the Army later retaliated, according to Irby.

In September 2015, Irby and Gorres resolved the EEO complaint through a settlement agreement. After this resolution, Gorres continued supervising Irby until September 2016, when Gorres retired from the Army.

About two years later, in June 2018, Irby alleges that another colleague started yelling at him after Irby said something she disagreed with. Shortly after Irby reported this behavior, this same colleague filed an EEO complaint against Irby, alleging a history of bullying, disrespectful behavior, and sexual harassment. In response, then-Lieutenant Colonel Sean Hubbard tasked Captain Brendan Hickey with investigating the allegations under Army Regulation (AR) 15-6. While the investigation was ongoing and pending the results, Irby was suspended from his SHARP duties.

Irby's suspension from his SHARP position meant that the Army also suspended his credentials with the Department of Defense's Sexual Assault Advocate Certification Program (D-SAACP). SHARP professionals must obtain and maintain certification with D-SAACP as a prerequisite to discharging their duties. To keep valid D-SAACP credentials, SHARP employees must abide by the Sexual Assault Prevention and Response (SAPR) Code of Professional Ethics. A violation of the SAPR Code qualifies as cause for surrendering a D-SAACP certificate. Notably, the gatekeeper of D-SAACP certification is not the Army itself, but rather the National Organization for Victim Assistance (NOVA). NOVA is an independent organization that is not a part of the Department of the Defense. On behalf of its employees, the Army submits applications for D-SAACP certification to NOVA's board of civilian members.

While Irby's D-SAACP certification remained suspended, Hickey continued his 15-6 investigation into the EEO complaint, interviewing thirty witnesses. In August 2018, at the conclusion of the investigation, Hickey determined that the sexual harassment charge was unsubstantiated, but he found that Irby had "disrespected his coworkers, . . . caused/contributed to a hostile work environment, and . . . acted insubordinate to previous [SHARP] Resource Center leaders," all of which amounted to a violation of the SAPR Code of Professional Ethics. Hickey "recommend[ed] that administrative action be taken" against Irby and that "the vacant Program Manager position be filled." That same month, Gorres left retirement to resume his role as SHARP program manager.

On January 2, 2019, Gorres reached out to Hubbard to confirm that the investigation into Irby was completed. Gorres also advised that "[Human Resources Specialist Chasity] Needd is the CPAC Labor Management Employee Relations specialist I will work with as I proceed." Hubbard replied that the investigation was completed; he also stated, "Full

reinstatement as far as I'm concerned." Based on this response, Gorres believed that Irby's D-SAACP credentials would be reinstated.

The next day, Gorres provided a copy of the investigation to Needd to discuss the options available with respect to the "administrative action" Hickey recommended. Needd advised that "the best course of action would be the letter of reprimand for a period of one to three years" based on "the Army table of penalties, knowledge of what other similarly situated employees looked at, [and] the nature and seriousness of the offense." Gorres chose the three-year option, and Needd drafted the letter of reprimand based on the investigation's contents. A labor attorney with the Army then reviewed the letter of reprimand and approved it. On February 14, 2019, Gorres signed the letter of reprimand and delivered it to Irby. The letter stated that Gorres was "officially reprimanding [Irby] for creating a disturbance in the workplace and discourteous behavior." The letter went on to detail some of Irby's allegedly discourteous and disrespectful behavior.

Before Gorres issued the reprimand, on January 22, 2019, Colonel Quincy Norman sent a request for reinstatement of Irby's D-SAACP credentials because "[t]he sexual harassment complaint was unsubstantiated." The request did not address the investigation's findings of disrespectful behavior, hostile work environment, and insubordination. During that same month, a SHARP program analyst informed NOVA about the suspension of Irby's D-SAACP credentials.

On February 25, 2019, at the request of the NOVA D-SAACP review committee considering the pending request for reinstatement of Irby's credentials, Gorres spoke with the committee about the results of the investigation into Irby. Gorres informed them of the investigation's findings of infractions, the recommendation of administrative action, and the resultant letter of reprimand.

On March 1, 2019, Irby appealed the reprimand to Norman, the same individual who requested reinstatement of Irby's D-SAACP credentials. In response, Norman "reviewed and considered all of the information and documents supporting the [reprimand]," as well as Irby's "verbal and written response," and concluded that "[Irby] created a disturbance in the workplace and displayed discourteous behavior." Accordingly, Norman "sustain[ed] [the] 3-year letter of reprimand."

The next month, after the D-SAACP committee learned that Norman upheld the reprimand, the D-SAACP director sent a letter to Irby explaining that NOVA had denied reinstatement of his certification. The NOVA letter explains, "Based on the information learned during the phone call (there was a collateral investigation that occurred which resulted in a reprimand for conduct unbecoming, creating a hostile work environment, and insubordination), the D-SAACP Review Committee decided to not reinstate the applicant. The current suspension stands in the D-SAACP database."

A short time after NOVA denied reinstatement, Norman revoked Irby's suspended D-SAACP certification. The letter informing Irby of the revocation explained that "[t]he D-SAACP Review Committee denied reinstatement of [Irby's] credentials based on findings of a Commander's investigation." "Revocation is being pursued due to Commander's investigation which did substantiate a pattern of conduct causing hostile workplace and disrespect of co-workers." After this revocation, Irby could no longer work as a SHARP trainer, and he was transferred to perform duties in the III Corps G3 section. The transfer letter informed Irby that "[his] pay, benefits, title, series and grade will remain the same."

After exhausting his administrative remedies, Irby sued the Army for retaliation in violation of Title VII. Irby alleged that he engaged in a protected activity by filing an EEO complaint against Gorres in 2015 and as a result

suffered adverse employment actions in the form of the reprimand and job transfer in 2019. The district court granted the Army's motion for summary judgment on three separate grounds, namely, Irby's failure to (1) show any adverse employment action; (2) establish a causal link between the protected activity and the adverse action; and (3) prove that the Army's proffered reason for the employment actions was pretextual. Irby now appeals.

## II.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 781 (5th Cir. 2024). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (internal quotations marks omitted). "All facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings." *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).

We apply the familiar *McDonnell Douglas* burden-shifting framework to retaliation claims premised on circumstantial evidence, including Irby's. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022). Under this framework, the plaintiff-employee must first establish a prima facie case of retaliation. *Id.* "If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide 'a legitimate, non-discriminatory reason'" for the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

No. 23-50747

"If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual." *Id.* The plaintiff-employee establishes pretext by "showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

"Ultimately, in order to survive a motion for summary judgment, a plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Brown*, 969 F.3d at 577 (cleaned up) (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (internal quotation marks omitted)

Upon review, we assume without deciding that Irby established a prima facie case of retaliation. The next question is whether the Army has a legitimate, non-discriminatory reason for reprimanding Irby and transferring him from his position as a SHARP trainer. *Id.* The Army argues that it does: an independent investigation into Irby found that he disrespected his coworkers, contributed to a hostile work environment, and acted insubordinate to his higherups. This behavior violated the SAPR Code of Ethics. And under the version of Department of Defense Instruction (DODI) 6495.03 in effect at the time of the investigation, a violation of the SAPR Code of Ethics was grounds for suspending and revoking D-SAACP credentials. The notice informing Irby of the revocation of his D-SAACP credentials cited DODI 6495.03 as justification for the action. After NOVA denied reinstatement of Irby's credentials and the Army revoked them, Irby no longer met the prerequisites to be a SHARP trainer and had to be transferred. Further, the investigation into Irby recommended an administrative action, and Needd suggested a letter of reprimand to Gorres.

We find the above evidence sufficient to carry the Army's burden on this step of the burden-shifting framework. "The defendant's burden during this second step is satisfied by producing evidence, which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Price v. Fed. Exp. Corp.*, 293 F.3d 715, 720 (5th Cir. 2002) (emphasis omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Taking the Army's evidence as true permits the conclusion that Irby was reprimanded and transferred for non-discriminatory reasons.

The burden then shifts back to Irby to rebut the Army's rationale. Irby makes several arguments in this vein, none of which create a genuine dispute of material fact on the question of whether the Army would not have reprimanded and transferred Irby but for his 2015 complaint against Gorres. First, Irby argues that Gorres "ignored policies, procedures, and a commanding officer's decision in issuing the reprimand and talking to [D-SAACP], which is evidence of pretext." Specifically, Irby points to a provision of AR 15-6 that supposedly designates the "appointing authority," which Irby contends was Hubbard in his case, as the only official who could act on an administrative investigation. Reading this provision carefully, we cannot see how Gorres violated it. Assuming Hubbard was the appointing authority, Hubbard acknowledges that Hickey, the investigating officer, recommended administrative action. We cannot see how Hubbard's inaction in response to the investigation's findings caused Gorres to violate policy by acting on Hickey's recommendation. And nowhere does the policy prevent a supervisor from speaking with the D-SAACP committee, which reached out to Gorres, not vice versa.

Even assuming that Gorres did not follow the letter of Army policy, "mere deviations from policy, or a disagreement about how to apply company policy, do not show pretext." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460 (5th Cir. 2019). The fact that

No. 23-50747

Gorres *might* have deviated from policy in issuing a reprimand that was nevertheless recommended by an independent investigation—led by an official with no connection to Irby's protected activity from 2015 and upheld by another reviewing official—does not raise "a conflict in substantial evidence" as to pretext. *Brown*, 969 F.3d at 577.

Next, Irby attempts to create an issue of fact on the grounds that he was treated differently than another employee who allegedly engaged in similar behavior. But as the district court noted, "[a] plaintiff who proffers the treatment of a fellow employee must show that the plaintiff's [adverse action] was taken 'under nearly identical circumstances' as those faced by the comparator." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (quoting *Lee v. Ks. City So. Rwy. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009)). "Employees are similarly situated when they held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (internal quotation marks omitted). The undisputed evidence indicates that Irby's alleged comparator had a different job, supervisor, and violation history than Irby himself. Thus, Irby has failed to establish pretext on the basis of disparate treatment.[1]

———————————————

[1] Irby also attempts to present "evidence of a modus operandi for how Mr. Gorres retaliates against people using D-SAACP certification" based on hearsay evidence about Gorres allegedly revoking another employee's credentials. There are two problems with this argument. First, Irby never identified the revocation of credentials as the alleged adverse employment action; instead he focused on the reprimand, Gorres's comments to NOVA, and the job transfer. Second, Irby's argument as to Gorres's alleged "modus operandi" shares the same defect as his comparator argument. Without evidence that Irby suffered the adverse actions under circumstances nearly identical to those surrounding the other employee whose credentials Gorres allegedly revoked, this argument cannot create a genuine dispute of fact as to Gorres's allegedly retaliatory motive.

Finally, Irby challenges the contents of the reprimand as allegedly containing unsubstantiated and uncorroborated claims, as well as a reference to activity that occurred around the time of Irby's EEO complaint against Gorres. But the uncontroverted evidence clearly indicates that Needd drafted the reprimand, not Gorres. Thus, even if Irby could cast doubt on the contents of the letter of reprimand, that doubt would not speak to Gorres's allegedly retaliatory motive, as Gorres was not responsible for the letter's contents. That the reprimand was upheld on appeal after an official other than Gorres reviewed the relevant evidence undermines Irby's argument even further. What's more, "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Irby has failed to identify a genuine issue of material fact concerning whether his reprimand, Gorres's comments to the D-SAACP committee, and the job transfer would not have occurred but for the 2015 EEO complaint against Gorres. The Army has presented a legitimate, non-discriminatory rationale for these actions in the form of an independent investigation finding multiple infractions and violations of a professional code. The district court properly granted summary judgment to the Army on this issue.

## III.

Lastly, Irby asks this court to reverse the district court's grant of the Army's motion to withdraw deemed admissions. Irby served discovery requests, including requests for admission, on the Army on July 5, 2022. Prior to this discovery being served, the Army had moved for judgment on the pleadings and to stay discovery pending resolution of the motion. On August 23, 2022, a few weeks after the Army's discovery responses were due, Irby moved for summary judgment on the basis of the deemed admissions. The Army opposed this motion and moved to withdraw the deemed admissions.

No. 23-50747

The district court granted the Army's motion and denied Irby's motion for summary judgment based solely on the deemed admissions. Irby now appeals the district court's withdrawal of the deemed admissions.

"Like other discovery rulings, we review rulings granting or denying leave to withdraw or amend Rule 36 admissions for abuse of discretion." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). Based on the facts presented, the district court did not abuse its discretion in letting the Army withdraw its deemed admissions.

## IV.

For the foregoing reasons, we AFFIRM.